## ZAMATA v. BROWNING, Chief of Police.

No. 3194.   Decided February 7, 1918.   (170 Pac. 1057.)

1. INTOXICATING LIQUORS—REGULATION—POWERS OF MUNICIPALITIES. Sess. Laws 1917, c. 2, Section 40, repealing all acts in conflict with such act, which was in effect a "bone-dry law," did not repeal Laws 1915, c. 120, sections 206x41 and 206x49, in so far as they empowered municipalities to prohibit the manufacture, sale, or disposition in any manner of intoxicating liquors. (Page 402.)

2. INTOXICATING LIQUORS—REGULATION—POWERS OF MUNICIPALITIES. The mere fact that the state by the enactment of Sess. Laws 1917, c. 2, section 40, assumed jurisdiction of the subject of intoxicating

liquors, did not impliedly remove the right of cities to prohibit the sale and use of liquors within their limits.[1]   (Page 407.)

3. INTOXICATING LIQUORS—REGULATION—POWERS OF MUNICIPALITIES. The Legislature by enacting Sess. Laws 1917, c. 2, section 40, and expressly repealing acts in conflict therewith, did not repeal Laws 1915, c. 120, sections 206x41 and 206x49 in so far as they empowered cities to prohibit intoxicating liquors in view of the rule that the expression of one thing excludes all others; there being no conflict between such statutes.   (Page 407.)

4. INTOXICATING LIQUORS—REGULATION—POWERS OF MUNICIPALITIES. In view of Laws 1917, c. 2, section 20, providing that, on conviction of any person in any city for violation of any city ordinance relating to liquors, notice shall be sent thereof to the Attorney General, the Legislature did not by such act, generally prohibiting sale, keeping and use of liquors, repeal Laws 1917, c. 2, section 40, empowering cities to prohibit sale and keeping of intoxicating liquors, (Page 407.)

Habeas corpus, on the relation of Juan Zamata, against Thos. E. Browning, as Chief of Police of Ogden City.

WRIT DENIED, and plaintiff remanded into defendant's custody.

*Samuel C. Powell* and *J. N. Kimball* for plaintiff.

*Dan. B. Shields,* Atty. General, and *Jas. H. Wolfe* and *O. C. Dalby,* Asst. Attys. Gen., for defendant.

THURMAN, J.

The plaintiff, Juan Zamata, was convicted December 22, 1917, in the municipal court of Ogden city, of the offense of selling intoxicating liquor in violation of an ordinance of the city enacted since the prohibition liquor law passed by the last Legislature went into effect.   He was sentenced to a term of imprisonment and placed in the cutody of the defendant, chief of police of said city.   Plaintiff instituted this proceed-

---

[1] *People* v. *Brown,* 2 Utah, 462; *Logan City* v. *Buck,* 3 Utah, 301, 2 Pac. 706.

ing to procure his release from said imprisonment. The provisions of the ordinance under which plaintiff was convicted are in terms substantially identical with the provisions of section 3 of the prohibition law above referred to. Chapter 2, Sess. Laws 1917. Plaintiff assails the validity of the ordinance, and challenges the power of the city to enact it, especially the provision making the sale of intoxicating liquor an offense against the city. It must be admitted if the city had no power to enact the ordinance, the court had no power to enter the judgment, and the defendant no power to restrain the plaintiff, or deprive him of his liberty.

The contention of plaintiff proceeds upon the theory that the Legislature of 1917, by the enactment of the prohibition law, which is confessedly state-wide in its operations, thereby deprived the municipal corporations of the state of whatever power they theretofore had to prohibit the sale of intoxicating liquors; that all laws and ordinances theretofore existing and the power of municipalities to enact ordinances prohibiting the sale of such liquors were by the prohibition law of 1917 repealed either expressly or by implication, and that when such law went into effect the state alone thereafter had jurisdiction in respect to such matters. The defendant takes issue with this contention of the plaintiff, and insists that the law granting to municipal corporations the power to prohibit the sale of intoxicating liquor has not been repealed, either expressly or by implication, either by the prohibition law or any other law of the state, and that the ordinance of Ogden city, under which plaintiff was convicted and sentenced to imprisonment, is valid and in full force and effect. Defendant further contends that in any event the ordinance in question is a valid exercise of the power of Ogden city under what is known as the general welfare clause of the charter, which gives the city power in matters pertaining to the peace, good order, health, and morals of the city and persons within its jurisdiction. The issues thus drawn between plaintiff and defendant are of great interest to the people of this state, and the proper determination of such issues is of the most vital importance.

Almost from the very beginning of the settlement of Utah the governmental policy of the people has been to incorporate the separate communities into cities and towns and to clothe them with power almost extraordinary in matters pertaining to internal police and the general welfare. They were originally incorporated under special charters and practically every charter conferred the power, in express terms, to license, regulate, and prohibit the manufacture and sale of intoxicating liquors. Prior to 1882 there was little or no general legislation relating to the subject. The whole matter of regulating, restricting, and prohibiting the manufacture and sale of intoxicating liquors was left to the municipal corporations under the powers enumerated in their respective charters. In 1882 (Laws 1882, c. 28) the Legislature enacted a general law providing for licensing the manufacture and sale of liquor and regulating the same. The power was conferred upon the county selectmen outside of municipal corporations, and left with the cities within their municipal boundaries. The power of the cities to absolutely prohibit within their respective territories was left entirely unimpaired. This law, with only slight changes from time to time, continued in force until the legislative session of 1911. In the meantime, however, in 1884, a general act for the incorporation of cities and towns and prescribing their powers was enacted by the Legislature, and so much of the act as defined the powers of cities was made cumulative and supplementary to the powers of municipal corporations theretofore incorporated. These, as before stated, had been operating under their special charters, but the general act above referred to, by express provision, was made applicable to them as well as to cities to be incorporated thereafter. Comp. Laws Utah 1888, section 1755. Subdivision 41, being a part of the act above referred to, authorized the cities to punish and prohibit the selling or giving away of intoxicating liquors. Subdivision 49 of the same section authorized the prevention of intoxication. The same provisions are found in Rev. Stat. Utah 1898, section 206, subds. 41 and 50, also in Comp. Laws Utah 1907, section 206, subds. 41 and 50. We refer to these matters of legislative history to illustrate the

tenacity with which the Legislature of Utah adhered to the policy of endowing the cities of the territory and state with full power within their respective limits in dealing with the subject of liquors and the prevention of intoxication. This condition, without substantial change or modification, continued until the legislative session of 1911 when what is called the local option law was enacted. The general law of 1911, so far as material here, provided for the divison of each county in the state into voting units for the purpose of determining whether or not the sale of intoxicating liquors therein should be permitted. Each city and town constituted one unit and the remainder of the county constituted another. Sess. Laws 1911, c. 106, section 48. If the unit voted for the sale of liquor, license and regulation was required. If it voted against the sale, the sale thereof was prohibited. Section 61. This was the law in each unit whether city or county, but in order to preserve intact the powers of cities under their charters as modified by the law the same Legislature expressly amended Comp. Laws Utah 1907, section 206, subd. 41, above referred to, making it conform to the general law. It still left in cities, however, the power to prohibit in cases where the city voted against the sale. Sess. Laws Utah 1911, p. 212. Amendments were made by subsequent Legislatures down to and including the session of 1915, both to the general law and to the city charter respecting prohibition and the prevention of intoxication. The Legislature at each session, however, was careful to preserve the powers of municipal corporations as they existed prior to the local option law of 1911, except as they were modified to harmonize with the principle of local option. See Sess. Laws 1913, section 68, at page 133; Sess. Laws 1915, section 206x41, p. 162, and 206x49, p. 163; also see same volume, section 206x87.

It will be instructive at this point to show exactly what the charter power of municipal corporations was as amended by the Legislature of 1915:

"206x41. To license and regulate, or prohibit the manufacturing, selling, giving away or disposition in any manner, of any intoxicating liquors; provided no license for such pur-

pose shall be issued by the city council of any city where the qualified electors of such city have voted 'against sale' of intoxicating liquors and where the qualified electors have voted 'against sale' of intoxicating liquors, the city council of such city shall prohibit the manufacturing, selling, giving away, or disposition in any manner, of any intoxicating liquors, except the manufacture thereof as provided by law," etc.

"206x49. To prevent intoxication, fighting, gambling, quarreling," etc.

"206x87. To pass all ordinances and rules, and make all regulations not repugnant to law, necessary for carrying into effect or discharging all powers and duties conferred by this act, and such as are necessary and proper to provide for the safety, and preserve the health, and promote the prosperity, improve the morals, peace and good order, comfort, and convenience of the city and the inhabitants thereof, and for the protection of property therein," etc.

Thus it appears when the Legislature of 1917 assembled and entered upon the duty of recasting the law relating to this subject, it found the law as far as cities were concerned to be that each city had the power, where its voting population had voted against the sale, to absolutely prohibit the sale of liquor except in the limited number of cases provided for in the local option law. The power to prohibit had been preserved throughout all this period of legislation in the manner we have described. Even the number of the sections and subdivisions of the statute in which the power had been given were retained, and nowhere in all this legislation is there a suggestion of repeal. The most that can be said in that respect is that in the event the city voted for sale, the power to prohibit in that particular city was suspended as long as that condition continued. If, thereafter, the city voted against the sale, the power to prohibit was rehabilitated and put into effect by virtue of the charter power to which we have so often referred. It remains, therefore, to be considered whether the power given by the charter relating to this subject was repealed by the prohibition law enacted by the Legis-

lature of 1917. This act, as is well known, is practically a "bone-dry" law. It prohibits the sale and manufacture of intoxicating liquor for. every possible use as a beverage, and even for medicinal purposes. It expressly repeals the local· option law of 1911 and the amendments thereto in 1913 and chapter 53 of Sess. Laws 1915, which relate to the liquor question, but it does not expressly repeal the charter powers of municipal corporations above quoted, or make any express reference thereto in any manner or form. After expressly repealing all the general legislation in relation to the subject of intoxicating liquors in the manner above stated, it then adds this section:

"All acts and parts of acts in conflict with the provisions of this act are hereby repealed." Sess. Laws 1917, c. 2, section 40.

We therefore conclude if the power given to cities to prohibit the manufacture and sale of intoxicating liquors has been repealed at all, as contended by the plaintiff in this proceeding, it must be because the power is in conflict with the prohibition law. To say that the power to prohibit is in conflict with a "bone-dry" prohibition law is to advance a proposition untenable from any point of view. It is contradictory on its face and paradoxical in the extreme. It would probably be unfair to assume that plaintiff makes serious contention that the charter power of cities to prohibit is repealed by implication by reason of any inconsistency or conflict existing between the laws, for the rule is well established in this regard, and is succinctly stated in the following excerpt from Lewis, Suth. Stat. Const. vol. 1, p. 464:

"The intention to repeal however will not be presumed, nor the effect of repeal admitted, unless the inconsistency is unavoidable, and only to the extent of the repugnance."

There is no inconsistency between the power of the city to prohibit, as declared by its charter, and the prohibition law. There is no repugnance, no conflict, and hence there is no repeal by implication because of apparent conflict or repugnance.

Plaintiff's real contention, however, is that the state having

assumed jurisdiction of the subject of intoxicating liquors in every political subdivision of the state, has thereby, by implication, excluded every other authority from having anything to do with it except possibly the matter of drunkenness and intoxication. Just why this exception is made is on the principle contended for, difficult to see and understand, unless it be to give some force and effect to a provision found in section 20 of the prohibition law, which on its face is utterly irreconcilable with plaintiff's main contention. This provision will be quoted before concluding this opinion.

In support of his contention that the jurisdiction of the state is exclusive, plaintiff cites the following authorities: *People* v. *Brown,* 2 Utah, 462; *Logan City* v. *Buck,* 3 Utah, 301, 2 Pac. 706; *State* v. *Frederic,* 28 Idaho, 709, 155 Pac. 977; *Mayo* v. *Williams,* 146 Ga. 650, 92 S. E. 59; *Kassel* v. *Mayor, etc., of Savannah,* 109 Ga. 491, 35 S. E. 147; Suth. Stat. Const. section 156; Woollen & Thornton, Intoxicating Liquors, sections 179–279; *Ex parte James,* 4 Okl. Tr. 94, 111 Pac. 947. None of the above cases or authorities, however, have any application where, as shown in this case, the city has specific authority conferred by charter which has not been repealed. The cases are all easily distinguished, but we consider it unnecessary to do so in minute detail in view of the conclusion we have reached; besides this, the doctrine of the cases relied on by plaintiff is controverted and denied by a much larger number of cases and authorities cited by defendant, the reasoning of which appeals to the court as being more worthy of consideration.

In addition to what has been said in the foregoing remarks, it appears to the court that if the Legislature had intended to repeal the provisions of the charter which we have quoted, it would have done so expressly while it was engaged in the business of expressly repealing laws relating to the liquor question. "Expressio unius est exclusio alterius" ought to apply in this case with peculiar force. But aside from these considerations we find in section 20 of the prohibition law a provision which in our judgment is well-

nigh conclusive of the fact that the Legislature did not intend to interfere with the powers of municipal corporations to prohibit the sale of liquor.   The provision reads:

"Immediately upon conviction of any person in any town, city or county of this state for violation of any provision of this act, or for violation of any city ordinance, relating to liquors, it shall be the duty of the clerk of the court or the justice of the peace to notify the Attorney General of such conviction, giving in writing full particulars of the case on forms [to be] supplied by the Attorney General."

This is an undoubted recognition of the fact by the Legislature expressed in the law itself that cities, by city ordinances, may exercise jurisdiction in respect to matters "relating to liquors." It is a recognition of the fact that there will be convictions for the violation of city ordinances "relating to liquor," and the court confesses its inability to view the law in any other light than that the Legislature contemplated that the cities of this state, by proper and suitable ordinances in harmony with the general law would continue to be potent arms of the state as they always had been in preventing and suppressing the evils resulting from the use of intoxicating liquors.   The proposition advanced by plaintiff that it might involve a second conviction for the same offense, one under the general law and another under the ordinances of the city, does not appeal to the court as having any force in support of plaintiff's contention.   That is a question that can be taken care of in practice as is and has been usual in other jurisdictions.   Some courts have held in cases of that kind that a conviction in one jurisdiction is a bar to a conviction in another jurisdiction for the same offense.   Others have held the contrary.   The latter holding seems to preponderate as we read the adjudicated cases.   It is not necessary for this court to decide in advance what its attitude would be in a case of that kind.   It is fair to presume from the language of the statute last above quoted, requiring reports of convictions to be made in all cases to the Attorney General, the Legislature may have intended to meet this very question.   However, the question of a double conviction as suggested is a matter that

can be taken care of whenever a case is presented for the consideration of the court.

*State* v. *Frederic,* 28 Idaho, 709, 155 Pac. 977, cited by plaintiff and seriously relied on by him in support of his contention, deserves a passing notice before concluding this opinion. It is an Idaho case, and involves the construction of the prohibition law of that state as it relates to the powers of municipal corporations. The case squarely holds that the city of Cœur d'Alene had no power to enact an ordinance making it an offense for one to have intoxicating liquor in his possession. The general prohibition law of the state made the same act a crime. The apparent analogy between that case and the case at bar is sufficient to require that pointed reference be made to its distinguishing features. The Idaho statute makes the offense of unlawfully having liquor in possession an indictable misdemeanor. The Constitution of that state (section 8, art. 1) in such cases provides that no person be held to answer, etc., unless on presentment or indictment of a grand jury or on information of the public prosecutor after commitment by a magistrate. This itself would seem to be sufficient to distinguish that case from the case at bar. It might with some reason be contended that when the Legislature of a state makes a crime indictable or subject to be prosecuted upon information, that a municipal corporation cannot make the same act a crime of a lesser grade, especially without express power which the cities in that state do not possess. But it is contended by plaintiff that inasmuch as the Utah statute makes a second offense under the law a felony, which is clearly without the jurisdiction of cities to punish, therefore this case is brought within the principles of the Idaho case. In answer to that it is sufficient to say the Ogden City ordinance does not attempt to make any distinction between a first offense and a second offense, and if the state after a conviction under the ordinances of Ogden should undertake to try a person for a second offense under the felony provision of the law, its right to do so can then be determined. The clearest distinction, however, in our judgment, between this case and the Idaho case we have reviewed, is the fact that the city of

Cœur d'Alene had no express power to enact the ordinance under which the defendant was convicted. Here, as we have shown, the express powers of the cities of Utah to prohibit the sale of intoxicating liquors is in full force and effect. In any event, if there is any doctrine in the Idaho case inconsistent with the views we have expressed in this opinion we are not inclined to follow it. We are thoroughly convinced from the legislative history of the state of Utah in relation to this question, and the attitude of the people of the commonwealth respecting the same, that the Legislature did not intend to deprive the municipal corporations of the power to prohibit the sale of liquor.

For the foregoing reasons, we are of the opinion that Ogden City had the power to enact the ordinance under which the plaintiff was convicted; that the judgment of the court was valid and the imprisonment of the plaintiff authorized by law. It is therefore ordered that the writ be denied; that the plaintiff be and he is hereby remanded into the custody of the defendant, chief of police of Ogden city, to be held by him under the judgment of the municipal court of Ogden city until he has served the sentence imposed, or is discharged according to law.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.